**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ALLSTATE VEHICLE & PROPERTY      :      CIVIL ACTION
INSURANCE COMPANY      :
     :
     :
         v.      :
     :
ANGIE HARRIS, ADMINISTRATRIX FOR    :
THE ESTATE OF AARON HARRIS      :      NO. 20-741


<u>**MEMORANDUM**</u>

**Padova, J.**                                             **July 22, 2020**

       Plaintiff Allstate Vehicle and Property Insurance Company ("Allstate") has filed this action

pursuant to 28 U.S.C. § 2201, seeking a declaration of the rights and liabilities of the parties under

a homeowners insurance policy issued by Plaintiff to Aaron Harris, now deceased. (Compl. ¶ 1.)

Defendant Angie Harris, Administratrix for the Estate of Aaron Harris, has moved to dismiss this

action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

We deny the Motion for the following reasons.

**I.       Background**

       The Complaint alleges the following facts. On January 3, 2018, Aaron Harris ("Harris")

applied to Allstate for a homeowners insurance policy for the property located at 2331 West York

Street, Philadelphia, PA 19132 ("the Property"). (<u>Id.</u> ¶ 6.) In the application, Harris represented

that he was living at the Property, that the Property was his primary residence, and that the Property

would be occupied within the next 30 days. (<u>Id.</u> ¶ 8, Ex. A at 4.) On January 10, 2018, based on

these representations, Allstate issued Standard House & Home Policy No. 998829911 ("the

Policy") to Harris. (<u>Id.</u> ¶ 9, Ex. B.)

On or about February 20, 2018, the Property was damaged by fire.  (Id. ¶ 11.)  The Fire Marshal for the City of Philadelphia Fire Department determined that the cause of the fire was "'Incendiary.'"  (Id. ¶ 12.)  Harris contacted Allstate to file a claim for the fire damage to the Property within a few hours of the fire.  (Id. ¶ 14.)

As part of its investigation into Harris's claim, Allstate learned that the Property did not have active utilities, i.e., gas, electric, or water, on the date of the fire.  (Id. ¶ 16.)  The Fire Marshal's Report also noted "'hoarding conditions throughout the first floor'" with "'furniture and household items piled to the ceiling in the front and middle rooms of the first floor.'"  (Id. ¶ 17.)  Allstate also discovered that, at the time of the fire, Harris was on parole and was required, by the terms of his residency plan with the Pennsylvania Board of Probation and Parole, to live with his girlfriend, Amanda Ramos, at her home.  (Id. ¶ 19.)  Harris was not legally permitted to live at the Property without written permission from the Pennsylvania Board of Probation and Parole.  (Id. ¶ 19.)  The Pennsylvania Board of Probation and Parole never gave Harris permission to live at the Property.  (Id. ¶ 21.)

During its investigation of Harris's claim, Allstate obtained a recorded statement from Harris in which he admitted that he did not reside at the Property, but used it as a place to take women.  (Id. ¶¶ 24-26.)  Harris told Allstate's Fire Investigator, Gerard Piotrowicz, that he only used the Property as a "'bachelor pad,'" where he brought his girlfriends.  (Id. ¶ 27.)

Allstate also learned during its investigation, that, while Harris insured the Property for $258,775, he had purchased it in August 2017 for $4,000.  (Id. ¶ 23.)  Harris told Allstate in his recorded statement that he did not have insurance on the Property in the months between his purchase of the Property and his purchase of the Policy and that he had never previously obtained homeowners or renters insurance.  (Id. ¶ 30, Ex. E at 20.)  In addition, Allstate learned from

Harris's bank records that his accounts had negative balances during the relevant time period and were not associated with the Property's address.  (Id. ¶¶ 47-50.)  In May of 2018, Allstate requested that Harris submit to an Examination Under Oath; however, Harris was killed before the Examination Under Oath took place.  (Id. ¶¶ 32, 34.)

Angie Harris, the Administratrix for the Estate of Aaron Harris, has continued to pursue Harris's claim against Allstate on behalf of the Estate for "[w]hatever the policy is for the repairs of the property, and [its] contents."  (Id. ¶¶ 39, 46.)  On September 5, 2019, Angie Harris submitted to an Examination Under Oath in connection with the insurance claim, as did her daughter (and Harris's sister), Ashlee Harris.  (Id. ¶ 38.)  Neither Angie nor Ashlee knew of any documentation from the Pennsylvania Board of Probation and Parole that permitted Harris to reside at the Property.  (Id. ¶¶ 40-41.)  In addition, Angie testified that Harris was unemployed when he purchased the Property.  (Id. ¶¶ 42, 44.)

On March 3, 2020, Angie Harris filed a Complaint against Allstate in the Court of Common Pleas of Philadelphia County, seeking indemnification for the physical loss and damage to the Property.  (See Pl.'s Resp. Mot. Dismiss, Ex. B.)  Allstate removed that action, Harris v. Allstate, to this court on March 5, 2020.  (See Harris v. Allstate, Civ. A. No. 20-1285 (E.D. Pa.), Docket No. 1.)  The Complaint in Harris v. Allstate contains two claims for relief.  Count I asserts a breach of contract claim and Count II asserts a bad faith claim pursuant to 42 Pa. Cons. Stat. Ann. § 8371.[1]

---

[1]  We may consider the Complaint filed in Harris v. Allstate in connection with the instant Motion because it is a public record.  See Wright v. Phelan, Hallinan & Schmieg, LLP, Civ. A. No. 09-3538, 2010 WL 786536, at *1 n.1 (E.D. Pa. Mar. 8, 2010) ("Matters of public record, in this context, have been understood to include copies of pleadings and other materials filed in other courts." (quotation and citations omitted)).

Moreover, Angie Harris's attorney has certified that she is seeking damages in excess of $150,000 on behalf of the Estate of Aaron Harris in that proceeding.[2]  (See id., Docket No. 6.)

In the instant action, Allstate seeks a declaration that it owes no duty to indemnify the Estate of Aaron Harris for any damages relating to the February 20, 2018 fire at the Property and/or a declaration that rescinds or voids the Policy *ab initio*, due to Aaron Harris's misrepresentations.

## II.    Legal Standard

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  Moyer Packing Co. v. United States, 567 F. Supp. 2d 737, 748 (E.D. Pa. 2008) (citing Fed. R. Civ. P. 12(b)(1)).  A party may bring either a facial or a factual challenge to subject matter jurisdiction.  Id.  Here, Angie Harris brings a facial challenge.  "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . ."  Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).  "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint."  Id. (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889-92 (3d Cir. 1977)).  As such, "a facial attack 'contests the sufficiency of the pleadings.'"  Id. (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).

"In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'"  Id. (quoting In re Schering Plough Corp., 678 F.3d at 243).  "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under

---

[2]  We may consider this Certification in connection with the instant Motion because it is a public record.  See Wright, 2010 WL 786536, at *1 n.1. (quotation and citations omitted).

Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Id. (citing In re Schering Plough Corp., 678 F.3d at 243).  We may also consider "matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and '[i]ndisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." Atkin v. Johnson, Civ. A. No. 09-3982, 2010 WL 11537499, at *2 (E.D. Pa. Aug. 17, 2010), aff'd, 432 F. App'x 47 (3d Cir. 2011) (citations omitted); see also Wright v. Phelan, Hallinan & Schmieg, LLP, Civ. A. No. 09-3538, 2010 WL 786536, at *1 n.1 (E.D. Pa. Mar. 8, 2010) ("Matters of public record, in this context, have been understood to include copies of pleadings and other materials filed in other courts."  (quotation and citations omitted)).

## III.    Discussion

Allstate has brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides the following:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The "Act does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction." Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 394 (3d Cir. 2016) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950)). Additionally, "[t]he Act confers discretionary, rather than compulsory, jurisdiction upon federal courts and thus 'is an exception to the general rule that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" Homesite Ins. Co. v. Neary, Civ. A.

No. 17-2297, 2017 WL 5172294, at *2 (E.D. Pa. Nov. 8, 2017) (quoting Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014)).

### A.  Subject Matter Jurisdiction

Allstate asserts that we have diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Diversity jurisdiction requires two elements: (1) the parties must be completely diverse, meaning "no plaintiff can be a citizen of the same state as any of the defendants" and (2) the matter in controversy must be in excess of $75,000, before interest and costs.  Grand Union Supermarkets v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003); 28 U.S.C. § 1332(a).  A corporation is a citizen, for jurisdictional purposes, of both the state where it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

There is no dispute over the diversity of citizenship between the parties.  The Complaint alleges that Allstate is incorporated in Illinois with its principal place of business in Illinois, and Harris was a citizen of Pennsylvania.[3]  (Compl. ¶¶ 2-4.)  However, Angie Harris asserts that Allstate's claim fails to meet the $75,000 threshold because the action has "no actual amount in controversy."  (Def.'s Mot. Dismiss ¶ 5.)

Although Allstate seeks a declaration of the parties' rights and liabilities rather than a money judgment, "it is well established that the amount in controversy [in a declaratory judgment action] is measured by the value of the object of the litigation.'"  Auto-Owners Ins. Co., 835 F.3d at 397-98 (quoting Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)).  "In an insurance coverage declaration action, courts look to the value of the insurance policy and the

---

[3]  "If a party is deceased, 'the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent,'" for the purposes of diversity jurisdiction.  McCann v. Newman Irrevocable Tr., 458 F.3d 281, 286 (3d Cir. 2006) (quoting  28 U.S.C. § 1332(c)(2)).  Thus, Angie Harris, although a citizen of New Jersey, is deemed a citizen of Pennsylvania for purposes of this action as Harris's legal representative.

damages alleged in the underlying case to determine whether the jurisdictional amount in controversy has been met." <u>Homesite</u>, 2017 WL 5172294, at *2 (citations omitted).  As discussed above, we may consider the complaint itself, as well as public records, such as the complaint in <u>Harris v. Allstate</u> and the documents filed on record in that case, to determine the amount in controversy in the instant proceeding.  <u>See Atkin</u>, 2010 WL 11537499, at *2; <u>Wright</u>, 2010 WL 786536, at *1 n.1.  Moreover, as stated above, Angie Harris's lawyer filed a Certification in <u>Harris v. Allstate</u> certifying that she seeks damages in excess of $150,000 in that proceeding.  (<u>Harris v. Allstate</u>, Civ. A. No. 20-1285 (E.D. Pa.), Docket No. 6.)  Those damages represent the value of the "object" of the instant litigation for purposes of determining the amount in controversy.  <u>See Auto-Owners Ins. Co.</u>, 835 F.3d at 397-98; <u>Homesite</u>, 2017 WL 5172294, at *2.  Thus, because $150,000 exceeds the $75,000 threshold for diversity jurisdiction, we conclude that the allegations of the Complaint, together with the public record, satisfy both elements of diversity jurisdiction and we further conclude that this matter is properly within our subject matter jurisdiction.  <u>See Auto-Owners Ins. Co.</u>, 835 F.3d at 394 (citation omitted).

**B.  Discretionary Jurisdiction**

Having determined that we have subject matter jurisdiction over this action, we turn to the question of whether we should exercise our discretionary jurisdiction under the Declaratory Judgment Act.  In <u>Reifer v. Westport Ins. Corp.</u>, the United States Court of Appeals for the Third Circuit has set forth the following factors to guide our decision-making:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
(2) the convenience of the parties;
(3) the public interest in settlement of the uncertainty of obligation;
(4) the availability and relative convenience of other remedies;
(5) a general policy of restraint when the same issues are pending in a state court;
(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing
or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's
duty to defend in a state court and its attempt to characterize that suit in federal
court as falling within the scope of a policy exclusion.

751 F.3d at 146.  The fifth <u>Reifer</u> factor is particularly critical because jurisdiction should only be declined in the absence of a parallel state proceeding if the other seven factors weigh strongly against the exercise of jurisdiction.  <u>Id.</u> at 144-45.

We consider each factor in order.  First, the Declaratory Judgement Act allows this court to "declare the rights and other legal relations of [Allstate]" as an "interested party seeking such [a] declaration."  28 U.S.C. § 2201(a).  Thus, a declaration by this court will resolve the uncertainty of Allstate's obligations to Harris under the Policy.  This certainty of resolution weighs in favor of the exercise of jurisdiction.

Second, neither Allstate nor Angie Harris will face additional inconvenience by litigating in this Court, as opposed to the Court of Common Pleas of Philadelphia County, because our federal courthouse is just blocks from the Philadelphia Court of Common Pleas. We therefore consider this factor to be neutral.  Third, the parties have not raised any issues of public interest, and the Complaint does not appear to raise any issues of unsettled state law.  Thus, we consider this factor to be neutral as well.  Fourth, the parties could seek the same "declaratory relief in the state court, [but] to do so now would require the filing of a new action" in the Court of Common Pleas of Philadelphia County, which would only add inconvenience.  <u>Homesite</u>, 2017 WL 5172294, at *3 ("It is arguably more convenient for the parties to litigate in this court rather than start anew." (citation omitted)).  Accordingly, the fourth <u>Reifer</u> factor weighs in favor of the exercise of jurisdiction.

Fifth, and most importantly, we must "determine whether there is a 'parallel state proceeding,'" which would weigh against exercising discretionary jurisdiction in this Court. Id. (quoting Reifer, 751 F.3d at 143, 146). "A parallel state proceeding is a pending matter involving the same parties and presenting [the] opportunity for ventilation of the same state law issues." Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 284 (3d Cir. 2017) (alteration in original) (quotation and citations omitted). Here, the parallel proceeding, Harris v. Allstate, Civ. A. No. 20-1285, although filed in state court, was removed to this court on March 5, 2020. Additionally, there is a motion pending to consolidate the two cases. (See Docket No. 4.) Consequently, there is no parallel state proceeding. This "absence of [a] pending parallel state proceedings militates *significantly* in favor of exercising jurisdiction." Reifer, 751 F.3d at 144-145 (emphasis added).

Sixth, as there is no pending parallel state court action, there is no concern regarding duplicative litigation. See Foremost Ins. Co. v. Nosam, LLC, Civ. A. No. 17-2843, 2018 WL 417035, at *3 (E.D. Pa. Jan. 12, 2018) ("[T]he same issues are not pending in state court and there is no need to avoid duplicative litigation."). The absence of duplicative litigation weighs in favor of exercising jurisdiction. Seventh, because this action was not removed from state court and no declaratory relief action was filed there, there is no issue of procedural fencing or res judicata. Thus, the seventh Reifer factor is also neutral. Eighth, and finally, "any inherent conflict of interest between [Allstate's] position in this declaratory judgment action and the underlying civil suit would be the same, regardless of whether the insurance coverage dispute is litigated in state or federal court." Homesite, 2017 WL 5172294, at *4. As such, this final factor is neutral to our determination.

In summary, having resolved that there is no parallel state proceeding and having weighed each of the factors outlined in Reifer, we determine that those factors weigh in favor of our exercise

9

of jurisdiction.  We conclude, accordingly, that our exercise of discretionary jurisdiction over this action is appropriate and in the interests of judicial economy.  See Reifer, 751 F.3d at 141 (citation omitted).

**IV.    Conclusion**

For the foregoing reasons, we deny Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1).  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.